**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| JENNIFER SCHWARTZ and MIA ROSENBERG, individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br>v.<br><br>DEVA CONCEPTS, LLC, d/b/a DevaCurl<br><br>                Defendant. | **CASE NO.  1:20-cv-1657**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

As and for this Class Action Complaint, Plaintiffs Jennifer Schwartz and Mia Rosenberg individually and on behalf of all others similarly situated, allege the following against Defendant Deva Concepts, LLC, ("Defendant" or the "Company"), based on personal knowledge as to Plaintiffs, and Plaintiffs' own acts and as to all other matters, based upon, *inter alia*, the statements of Defendant, publicly disseminated news reports, and the investigation conducted by and through Plaintiffs' undersigned counsel:

### SUMMARY OF CASE

1.      This is a civil class action brought by Plaintiffs on behalf of consumers who purchased Defendant's "DevaCurl No-Poo Original" non-lathering conditioning cleanser (the "No-Poo Product"), DevaCurl One Condition® Original hair-conditioner, DevaCurl Light Defining Gel, DevaCurl Low-Poo Original cleanser, DevaCurl Low-Poo Delight cleanser, DevaCurl No-Poo Decadence cleanser, DevaCurl One Condition® Delight hair-conditioner, DevaCurl One Condition® Decadence hair-conditioner, Melt into Moisture Mask, Styling Cream, DevaCurl Leave-In Decadence conditioner, Super Stretch Coconut Curl Elongator, Wavemaker,

1

and DevaCurl Ultra Defining Gel (collectively "the Products") which are used for personal cosmetic purposes. Plaintiffs seek damages and equitable remedies for themselves, and for the Class and Subclasses (defined below).

2.     Defendant manufactures hair care products. The Company produces and markets a range of products for cleaning, conditioning, and styling curly hair. Deva Concepts serves customers throughout the United States and Canada through, *inter alia*, retailer who sell beauty products, hair care products, and cosmetics.

3.     In response to the growing trend of moving toward sulfate-free shampoo and away from sulfate shampoos, as sulfates can potentially cause damage to hair, in 2002, Defendant created an innovative new haircare category with the launch of No-Poo Original. The Company touted this product as "our game-changing alternative to traditional shampoo. This first-of-its-kind, no-suds conditioning cleanser is free of sulfates, parabens, and silicones to gently cleanse curls without stripping the natural oils they need to look healthy, bouncy and simply gorgeous."[1]

4.     Many consumers, including Plaintiffs have used the No-Poo Product as a complete shampoo replacement once or twice a week to cleanse hair rather than using traditional shampoo.[2] Therefore, consumers seeking a complete alternative to traditional shampoo end up purchasing the No-Poo Product.

5.     In addition to the No-Poo Product, Defendant has formulated, manufactured, marketed and sold many accompanying products for the same purposes to consumers in this District and across the country, including conditioners and gels.

6.     Consumers pay a premium over the cost of traditional retail and salon shampoos for Defendant's Products, based upon the representations above.

---

[1] https://www.devacurl.com/us/curl-101/our-story
[2] https://www.glamour.com/gallery/best-curly-hair-products, (last visited January 13, 2020).

7.     However, despite the "DevaCurl phenomenon" that has caused many curly haired consumers across the United States to purchase and use the Products, use of the Products cause scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding during normal use by consumers. Indeed, thousands of consumers have reported their hair failing out shortly after or during actual use of the Products.

8.     Defendant provides no warning about these consequences, and in fact makes numerous assertions about the gentle and beneficial nature of the Products. For example, Defendant's website makes statements relating to its No-Poo Product such as "[t]raditional shampoo can be too harsh for curls. That's why we made No-Poo Original! The non-lathering formula with peppermint and grapeseed oil gently cleanses without stripping the natural oils your curls need."[3] With regard to its One Condition® Original product, Defendant's website states "When it comes to curls, it's all about condition, condition, condition. So apply, rinse and repeat as often as needed!"[4] These statements and others were and are false, deceptive, and misleading and have harmed Plaintiffs and the Class.

9.     Defendant conceals and fails to disclose the defective nature of its Products by actively misleading consumers into believing that the hair loss and shedding caused by the Products is "normal" and "common," that even excessive shedding of over 100 strands of hair per day is "common," and that shedding is not preventable.[5]

10.     Defendant unquestionably has knowledge and notice of the hair loss and scalp irritation caused by the Products. For example, Defendant has received multiple FDA complaints of hair loss and scalp irritation beginning in February 2018. There have been hundreds of

---

[3] https://www.devacurl.com/us/products/cleansers/no-poo-original/v/29767841742930
[4] https://www.devacurl.com/us/products/conditioners/one-condition-original/v/29778541346898
[5] *Id.*

complaints posted on social media sites like Facebook. Social media influencers have spread the word about the hair loss and scalp irritation caused by Defendant's Products. Major media outlets including the ABC television affiliate in New York City have broken the story.[6] Defendant has explicitly acknowledged the reports of hair loss and scalp irritation associated with its products, going so far as to post an explanatory statement on its website, prominently featured with a link entitled "a message for our devas" in the top right corner of the website's homepage.[7]

11.    Defendant has even created the "Curl Council" to deal with the consumer backlash as a result of the issues alleged herein.  However, the "Curl Council" is nothing more than 'window dressing' to address the fallout from bad "PR".[8]

12.    Despite notice and knowledge of the problems caused by the Products, Defendant has not recalled the Products, has not provided any warnings of the known risks, has denied that the Products cause the reported health issues, and has not offered its customers any compensation for their damages.

13.    Had Plaintiffs and other Class members known that Defendant's Products would cause hair loss, scalp irritation and other problems, they would not have purchased the Products.

14.    Plaintiffs and each of the Class Members have been damaged and suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices as set forth herein by Defendant and seek compensatory damages and injunctive relief.

15.    Given the massive quantities of the Products sold all over the country, this class action is the proper vehicle for addressing Defendant's misconduct and for attaining needed relief for those affected.

---

[6] https://abc7ny.com/health/customers-say-curly-styling-products-made-their-hair-fall-out/5906690/
[7] https://www.devacurl.com/us/deva-community-statement
[8] https://www.refinery29.com/en-us/2020/02/9363703/devacurl-hair-loss-damage-controversy.

## JURISDICTION AND VENUE

16.    This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 (federal question).

17.    This Court also has original jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, there are more than 100 class members, and at least one class member is a citizen of a state different from Defendants and is a citizen of a foreign state.

18.    The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

19.    Personal jurisdiction is derived from the fact that Defendant Deva Concepts, LLC, has regular and systematic contacts with the state of New York and places its products into the stream of commerce.

20.    Venue is proper under 28 U.S.C. § 1391 because Defendant Deva Concepts, LLC's headquarters and principal place of business is in this District.

## PARTIES

29.    Plaintiff Jennifer Schwartz is a resident of Parkland, Florida, who has purchased and used numerous DevaCurl Products within the relevant time period. Plaintiff Schwartz purchased numerous DevaCurl Products at a retail store located in Florida. Plaintiff Schwartz stopped using DevaCurl products when she became aware of the issues surrounding its use.

30.    Plaintiff Mia Rosenberg is a resident of Woodsburgh, New York, who has purchased and used DevaCurl Products within the relevant time period. Plaintiff Rosenberg

purchased numerous DevaCurl Products and numerous times at multiple retail locations in New York. Plaintiff Rosenberg has experienced significant hair loss and a significant loss of her curls.

31.    Defendant Deva Concepts LLC is incorporated in Delaware with its principal place of business at 560 Broadway Suite 206 New York, NY 10012 United States.

## FACTUAL ALLEGATIONS

32.    At all relevant times, Defendant has marketed the No-Poo Product through national marketing and advertising campaigns as being "free of harsh ingredients," a complete replacement for traditional shampoo that creates healthy curly hair without color fading, and as a "game-changing alternative to traditional shampoo."[9]

33.    On Defendant's website, it gives a three-step process for using the No-Poo Product and the DevaCurl One Condition® Original conditioner. Step one is "Wet curls and apply a generous amount to your scalp, scrubbing it in. Remember it won't lather, but it's still working!"[10]

34.    For step two it states, "Rinse thoroughly by scrubbing your scalp and letting the water move No-Poo Original through your ends." [11] Step three states, "Follow with One Condition® Original for additional moisture."[12]

35.    However, despite using Defendant's three step process, the No-Poo Product causes users to sustain scalp irritation, hair loss, and/or balding during normal use. Users have hair fall out in varying degrees during and immediately after use. The hair loss, scalp irritation and balding suffered by Plaintiffs and Class Members is embarrassing and can be extreme in certain instances.

---

[9] https://www.devacurl.com/us/curl-101/product-philosophy
[10] https://www.devacurl.com/us/products/cleansers/no-poo-original/v/29767841742930
(last visited February 19, 2020)
[11] *Id.*
[12] *Id.*

36.     The hair loss suffered by Plaintiffs and Class Members is not limited to the No-Poo Product. Indeed, many consumers, including Plaintiffs, have experienced hair loss, "shedding" and/or "thinning" after using Defendant's Products. Some users have had hair fall out in "clumps" and have suffered extreme distress as a result.

37.     Consumers of the Products pay a premium for them far and above what normal hair care products cost. For example, Defendant's No-Poo Product sells for $46.00 as compared to similar retail products sold at Target for as little as $3.99,[13]  a difference of more than $42. Defendant misleads consumers into thinking they purchased a premium product with greater health benefits and even say that excessive shedding is common, normal and non-preventable; however, users have revealed that in fact the Products cause hair loss, scalp irritation, thinning, breakage, balding during normal use. Further, consumers have also shown that changing from using the Products eliminates shedding.

38.     Consumers pay a premium for Defendant's Products because of the benefits Defendant claims they provide above and beyond normal hair care products. For example, in respect to Defendant's No-Poo Product, Defendant claims that the No-Poo Product is "Sulfate Free," that it is used to "gently cleanse," that it is not "harsh" or made with "harsh ingredients," that it gives "your curls what they need and nothing they don't," and that it comes with benefits such as the ability to keep hair from drying out and maintain composure.

---

[13] *Compare* https://www.sephora.com/product/no-poo-P378324?skuId=1784578&om_mmc=ppc-GG_1918213323_70847768576_pla-419288853760_1784578_353573794076_9021734_c&country_switch=us&lang=en&gclsrc=aw.ds&ds_rl=1261471&gclid=EAIaIQobChMItJr6jNG_5wIVRtbACh3WQw2KEAYYBCABEgLOjvD_BwE *with* https://www.target.com/p/suave-professionals-2-in-1-shampoo-and-conditioner-32-fl-oz/-/A-75560945.

39.     However, neither the product packaging nor any other advertising from Defendant warns users that the Products cause scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding, or any related injury during normal use.

40.     Similarly, nowhere on any of the packaging of the other of the Products does it state that scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding, or any related hair injury occurs from normal use of the Products.[14]

41.     With regard to its One Condition® Original product, at all relevant times, Defendant has marketed this product through national marketing and advertising campaigns as a premium product that is "free of harsh ingredients" and made with "nourishing, hydrating ingredients."

42.     In addition, on Defendant's website, Defendant claims that shedding of hair is "normal".[15]

43.     Defendant further explains hair loss is more prominent in curly-haired women because "Sadly, shedding is more common with curly-haired gals because we don't wash or brush our hair as often as our straight hair counter parts.'[16]

44.     In addition, the Products cause scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding. The hair loss is not *de minimis*—consumers, who suffer hair loss often lose significant amounts of hair-and the hair loss persists as long as the user uses the

---

[14] *See* Appendix A attached hereto.
[15] https://www.devacurl.com/blog/hair-shedding-101/ (last visited February 19, 2020).
[16] *Id.*

Products.

45.    Many consumers who suffered scalp irritation, excessive shedding, hair loss, thinning, breakage, and/or balding from the Products saw their symptoms stop by discontinuing their use of the Products.

46.    Every consumer who purchased the Products without the true facts about the Products and disclosure of the inherent health risks prior to purchase was injured at the point of sale when, instead of obtaining safe, natural, proven, guaranteed to promote hair growth, strengthening, and conditioning cleanser, consumers obtained Defendant's unreasonably dangerous and defective Products. Consumers have been further injured by way of requiring expensive professional hair treatment and medical treatment as a result of injuries caused by the Products.

47.    By marketing, selling and distributing the Products from New York to purchasers throughout the United States, Defendant made actionable statements that the Products were free of defects and safe and fit for their ordinary intended use and purpose.

48.    By marketing, advertising, selling and distributing the Products from New York to purchasers throughout the United States, Defendant made actionable statements that the ordinary use of the Products would not involve undisclosed safety risks. Further, Defendant concealed what they knew or should have known about the safety risks resulting from the material defects in the Products.

49.    Defendant engaged in the above-described actionable statements, omissions and concealments with knowledge that the representations were false and/or misleading and likely to mislead reasonable consumers. Alternatively, Defendant was reckless in not knowing that these representations were false and misleading at the time they were made. Defendant had and has

exclusive access to data pertaining to the Products' defect that Plaintiffs and members of the proposed Classes could not and did not have.

50.     Therefore, Plaintiffs, on behalf of themselves, the Nationwide Class, and the Subclasses, hereby bring this action for violations of various state and federal laws.

51.     Failing to include hair loss, scalp irritation, thinning, breakage, balding, on the labeling, product packaging, and by misleading customers by stating that shedding is "normal," "common," and "non-preventable" are material misrepresentations for consumers of the Products at issue here.

52.     Defendant further misleads consumers into thinking they can and should use unlimited amounts of the Products, through statements such as "When it comes to curls, it's all about condition, condition, condition. So apply, rinse and repeat as often as needed!"[17]

53.     Plaintiffs are in the same Class as all other consumers who purchased Defendant's Products during the relevant time period. Plaintiffs and Class Members purchased worthless products that caused scalp irritation, hair loss, balding, or otherwise failed to perform as they were intended, i.e., promoting healthy hair. Plaintiffs and the Class Members were in fact misled by Defendant's omissions and misrepresentations in respect to the Product. Plaintiffs and Class Members would have purchased other hair care products if they had not been deceived by the misleading and deceptive marketing and/or labeling of the Product.

54.     The following are just a small sample of more recent online complaints.  The complaints date back several years:

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on March 20, 2016, updated on December 4, 2019: "I started using DevaCurl No Poo and One Condition in early January and used it until about a week ago. My hair was gorgeous but I wasn't able to get my hair really clean and developed some crazy dandruff which I've NEVER had a problem with before. I

---

[17] https://www.devacurl.com/us/products/conditioners/one-condition-original/v/29778541346898

also noticed that I was shedding more hair than I was used to and that my hair seemed to be thinning a little. The shedding seem to get worse and that is the main reason that I stopped using it. When I switched back to Ogx coconut curls I was no longer shedding like crazy. Has anyone else had either of these issues while on these products?"

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on December 4, 2019: "I had long hair to my belly button and after switching everything to deva curl I was in denial of my hair loss until my hairdresser pointed out how my hair was shedding super bad and how it was thinking out. It's been a couple months now and my hair is getting back to normal. Devacurl didn't work for me and now I'm dealing with the issues it caused. I would just cry because my hair was falling out in big clumps!! Now I just use Olaplex for most my hair needs. Olaplex #3 has been helping with the bonding of my hair. I feel so sad you had to go through this as well."

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on November 4, 2019: "The same thing happened to me a couple of years ago. I went to a Deva salon in Nashville, TN. After my appointment I purchased the product line that was used. From my 1st time using it at home my hair began shedding in large clumps. I tried it one more wash day and the same thing happened. Once I stopped using the products the clumps of hair ceased from falling out. I informed my stylist at the salon and she told one of the Level 3 stylists who has done my hair there before too. Both said they had never heard of what I had experienced. Of course I'm thinking if the large clumps of hair that came out were that noticeable to me that they had to have seen it when they did my hair."

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on November 7, 2019: "This is crazy reading these posts! I went "no poo" over 10 years ago and hit the curly girl method HARD! Used all DC products and my hair was ridiculously gorgeous. I'm a redhead and typically shed a lot so I didn't really think too much about it but I remember thinking damn this is a lot! My stylist at the time commented on increased shedding but just assumed it was normal. She started getting out an extra towel to wipe the hair off her hands after washing my hair!! Gradually my hair started feeling dry and brittle, especially after ArcAngel and whatever the deep conditioner is. I started using new products and once I got rid of all DC products my hair was soft and happy again. Lesson learned!

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on November 6, 2019: "Hi - so glad I found your post and many others about how Deva Curl products ruined my hair !! First it looked good but within 4 months of use my hair became dry , brittle , broom like and was falling out !! I thought something was wrong with my health and started taking hair & skin vitamins and complained to the hair dresser who recommended deva curl to me . She had no idea it was the product that is absolutely horrible!! I spent over $100 on all the products and am now very upset trying to repair my hair ! If anyone

has a shampoo they recommend let me know . For now I'm going back to using Quidad and praying my hair grows back thick again & my curls come back . Good luck to you & everyone out there who experienced what I did - I wish we could all sue them !!!"

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on November 8, 2019: "Me too! I thought it was menopause but it's Deva Curl products! There's a Facebook group about the issue too. I've emailed Deva Curl to return my products for a refund. Hope they will be responsible enough to do at least a refund. Horrible hair loss! Even my daughter had horrible hair loss.

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on September 12, 2019: "I am mind-blown at this thread. I was alwaysss the kid with hair so thick that hair stylists said something about it every time I had my hair cut. A year ago I noticed hair loss starting. And a year ago I started Deva Curl styling products. I don't use their hair washing products. In June, I got my first Deva cut and she told me I have thin hair, and that was crazy to hear. It's now to the point that I have super thin areas on each side of my forehead, which made me go to the doctor. I had my hormones checked and all kinds of other blood work done, and it's all normal. I put the thoughts together and realized the hair loss started the same time I started Deva products. Then I found this thread. I am switching ASAP. Please, if anyone knows of cruelty-free products that give poofy, frizzy, curly hair definition and frizz control, help a girl out!!
and Deva Curl... thanks for that medical bill!"

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on September 4, 2019: "Yes. I used the No Poo Shampoo and Conditioner for two months. Every time I used these products my hair fell out in clumps during the shampoo and conditioning process. Initially, I thought this was me loosing dead hair, but it was more than that. I discontinued use and my hair slowed down dramatically in falling out. I've continued to use the styling products, but I'm questioning this now. Some days my hair looks amazing, and other days these products make my hair look terrible (i.e. stringy, frizzy, broomstick dry, distorted curl patterns). I don't have heat damage because I love wearing my hair flowy and curly, so it's not that. I'm very confused by these experiences! Overall, I'm not convinced it's worth the money. I've been reading about other women who've had similar experiences, which is alarming. I hope all of us continue to share. Granted, there are pros to the styling products, but the cons are pushing me away. I've watched the videos on how to use the products and I'm skilled at styling my hair, but all of this isn't adding up for me. I hope this helps!"

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on August 15, 2019: "I have had the exact same issues. When I started doing the curly girl process i lost a lost of hair, but I had not 'molted' for a while, so I wrote this off. I have continued to see molting and a lot of breakage as well, tho. The more concerning issue was the extreme itching and what was almost

like flaky acne. Bumps on my scalp that hurt and itched. I have found that the Arc Angel gel is the worst offender and now that I have stopped using that it has gotten a lot better. The products make my hair look great, but I wish I knew what ingredient was causing this issue. Spent SO MUCH MONEY on these products and am not excited about buying more products that may have the same stuff in them that will cause the same issue."

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on August 13, 2019: "I had the same reaction, I never really had dandruff until using devacurl. I bought the shampoo & conditioner & didn't finish either. My head was super itchy along with dandruff & hair-loss. It did make my hair a little curlier but overall I thinks it's a terrible product."

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on May 19, 2019: "Yes! My hair is thin, fine, frizzy, and curly. Deva curl took half of the little bit of hair I had! I'm so upset! I finally grew my hair long. And now I have to crop it!"

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on August 12, 2019: "Hi, just wanted to let you know you are not alone! Other men and woman have had the same results from using Deva Curl products in this last years specially in 2019 which the major complaints are excessive hair loss, very dry and broken hairs and irritation. Like most people that call Deva Curl and complained they always get an answer that puts the blame on us and never the products. We have started a support group page on Facebook called "Hair and Scalp Issues from Deva Curl Products - You are not Alone! We hope that you will join us and share your story so we can help many men and women around the world to help them figure out that they are not crazy, that is not their hormones or their old age and that there is a chance that it was their products they belived in that did this to them!"

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on April 10, 2019: "I'm having the exact same problem right now!!!!"

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on April 28, 2019: "Me too! I have been using the Devacurl no poo original and one condition since Christmas. I just recently had a deva cut and purchased the products recommended and I have been losing a lot of hair. My hair feels thinner, looks thinner, and my hair just is not the same."

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on March 24, 2019: "This can't be a coincidence. So I started using the no-poo almost exclusively on my wash days except for once a month when I used build up buster. Before that I alternated with the low poo Every other wash day and I never experienced shedding. Now that I started using mostly noo poo I'm seeing crazy shedding and breaking. I just switched to Oidad VitalCurl

and can't report on results but first impressions my scalp feels clean and my hair looks nice. I also read online that noo-poo in hard water areas can cause PH imbalances in the hair, which can lead to shedding. I know I have hard water so I'm hoping by using new brands I'll be able to use DevaCurl again someday because for the first 2 years it was great."

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on February 10, 2019: "I've used DivaCurl for a while and wonder now if it's making my hair thin out. It may be because I'm an little older, but I never had a problem before. The no-poo option works well for me because sulfates dry out my hair really bad. I think I'll switch over to Carol's Daughter, Mixed Chicks, or Shea Moisture to see what happens"

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on December 1, 2017: "I'm having the same experience with DevaCurl o Decadence. It does an incredible job of detangling but I'm losing my hair. The folks here saying this is about perception don't get it. I started using this about two years ago and wasn't attributing it to the product because it was happening before that - from my attempts to detangle it. The devacurl worked for awhile, but then recently, and particularly in the last few months, my hair has been coming out in small clumps, from the root whenever I use it. I notice it because I've been washing and conditioning more regularly for a newer style. It doesn't happen when I use other conditioners, and I know the difference because when I would go back to the Decadence (for the detangling) my hair would be coming out in clumps in my hands. Also, when so many people are saying the same thing, clearly there is an issue, so it's not just about our perception. I'm done with this product. If anyone has any detangling recommendations - not just products, but techniques too, I'm happy for them."

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on April 5, 2019: "Good morning, I could do, use your help. I'm going through the exact same thing. Except, I have never used this product. I was just wondering if you ever found a solution to your hair loss?"

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on October 17, 2019: "The same thing happened to me. Hair loss in Clumps, scalp irritation, and very noticeable loss in volume. I can see my scalp now. I feel like crying knowing that I have an entire box of products to throw away that cost me $100's. I'm terrified now of this happening with other "reputable" distributors. I can't believe this. It has really hit my self-esteem hard and my faith in curl brands."

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on February 2, 2017: "I have been using this for a few months and I have lost TONS of hair, I even went to get my hormones checked, they were on point!! I have lost so much it's noticeable and looking completely different

including parting all over... very unhappy and nervous, I am going to stop using it and see if it make a difference!

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on August 24, 2018: "My hair was so thick and it grew, I kid you not, nearly 3 inches a month. I measured. And I cut 6 inches off my very long hair to see if it would help curls form when I switched to Deva Curl. Well... after almost 2 months, my hair had gotten shorter. The breakage is horrible and it's falling out in clumps! Not just in the shower either! I don't dye my hair, I don't use any heat on it at all, and I don't use any product except the wave maker stuff from Deva Curl. So it had to be switching to Deva Curl.
I also only wash my hair once a week. So I know i'm not over washing it. I was also using the buildup buster every 2 washes.
I am nearly in tears from how much hair it caused me to lose.
I'm going back to Lush ASAP. I'll never switch from Lush again. No matter what hair products I use from there, my hair stays beautiful, thick, and fast growing! I had to get supplements just to get my hair to start growing again... unfortunately my nails were still growing fast and strong. So I'm having to trim them 3 times a week.                                                                              Ugh.
Don't let anyone talk you into sticking with Deva Curl! If you get a feeling that it's messing your hair up, STOP! I wish I would have after hair started coming out the first shower... but I thought it was just because it wasn't as easy to work through my hair as my Lush products were. I'm heartbroken you guys."

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on September 22, 2016: "I feel like i have been loosing a lot of hair. I notice its thinner. When i use my no poo shampoo and conditioner, tons of hair comes out. I am curious too if thats the problem. For now i am going to use my shea moisture shampoo and conditioner to see if shedding slacks off.

- https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473 posted on February 7, 2018: "I use every three days and my hair is shedding REALLY bad"

- https://curltalk.naturallycurly.com/discussion/136936/help-losing-hair-using-deva-products on December 2011: "A gal in my office and I are both losing handfuls of hair when using these products and I wasn't sure if it's the Deva products or the CG method in general causing the issue. I am a fine porous 3a / 3b and my friend has course 4a thick hair. Thanks!"

55.    Because of the pervasive complaints in respect to the Products, Defendant has knowledge of the alleged defects. Indeed, in January, Defendant issued a public statement

acknowledging the alleged defects but **refused** to take responsibility for the problem and otherwise refused to cure the alleged defects and remedy consumers.[18]

## CLASS ACTION ALLEGATIONS

56.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, including subsections (b)(2), (b)(3), and (c)(4), Plaintiffs Ciccia, McCreary and Ballarino, individually and on behalf of all others similarly situated, bring this lawsuit on behalf of themselves and on behalf of the proposed Classes:

> **Nationwide Class:** All persons in the United States who purchased DevaCurl Products as defined herein and as a result suffered damages (the "Class").

> **New York Subclass**:  All persons in New York who purchased DevaCurl Products as defined herein and as a result suffered damages ("New York Subclass").

> **Florida Subclass**:  All persons in Florida who purchased DevaCurl Products as defined herein and as a result suffered damages ("Florida Subclass").

57.    Excluded from the Class are Defendants and any entities in which Defendants or their subsidiaries or affiliates have a controlling interest, and Defendants' officers, agents, and employees. Also excluded from the Class are the judge assigned to this action, members of the judge's staff, and any member of the judge's immediate family. Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

58.    Numerosity: The members of each Class are so numerous that joinder of all members of any Class would be impracticable. Plaintiffs reasonably believe that Class and

---

[18] https://www.abcactionnews.com/news/national/florida-hairstylist-among-customers-claiming-devacurl-products-caused-serious-damage

Subclass members each total well over 1,000 persons. The names and addresses of Class members are identifiable through documents maintained by Defendants.

59.     Commonality and Predominance: This action involves common questions of law or fact, which predominate over any questions affecting individual Class members, including:

a. Whether the Products are defective such that they cause hair loss, scalp irritation or balding;

b. Whether and when Defendant had exclusive knowledge that the Products are defective but failed to disclose the defect to the public;

c. Whether the Products provide the benefits claimed by Defendant on the labeling, packaging, and/or in the course of its marketing;

d. Whether Defendant's conduct violated the applicable state consumer fraud claims alleged herein;

e. Whether Defendant's conduct constituted a breach of applicable warranties;

f. Whether Defendant's acts and omissions make it liable to Plaintiffs and Class Members for negligence and strict products liability;

g. Whether Defendant engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices in trade or commerce by objectively misleading Plaintiffs and putative Class and Subclass members;

h. Whether Defendant's conduct, as alleged herein, was likely to mislead a reasonable consumer;

i.   Whether Defendant's statements, concealments and omissions regarding the Products were material, in that a reasonable consumer could consider them important in purchasing the Products;

j.   Whether, as a result of Defendant's omissions and/or misrepresentations of material facts, Plaintiffs and members of the Class and Subclass have suffered an ascertainable loss of monies and/or property and/or value; and

k.   Whether Plaintiffs and Class members are entitled to monetary damages, injunctive relief, and/or other remedies and, if so, the nature of any such relief.

60.   Typicality: Plaintiffs' claims are typical of the claims of the other members of the Class because, among other things, Plaintiffs and the other Class members were injured through the substantially uniform misconduct by Defendant. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other Class members, and there are no defenses that are unique to Plaintiffs. The claims of Plaintiffs and of other Class members arise from the same operative facts and are based on the same legal theories.

61.   Adequacy of Representation: Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the other Class members they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation and Plaintiffs will prosecute this action vigorously. The Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

62.   Superiority: A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial

detriment suffered individually by Plaintiffs and the other members of the Class are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Defendants, making it impracticable for Class members to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

63.     Further, Defendants have acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

64.     Likewise, particular issues under Rule 23(c)(4) of the Federal Rules of Civil Procedure are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.  Such particular issues include, but are not limited to, those set forth in paragraph 60 above, which are incorporated by reference

### COUNT 1
### VIOLATION OF MAGNUSON-MOSS WARRANTY ACT
### 15 U.S.C. § 2301, *et seq.*
### (On Behalf of The Nationwide Class)

65.     Plaintiffs bring this count on behalf of themselves and the Nationwide Class and repeat and re-allege all previous paragraphs, as if fully included herein.

66.     The Products are consumer products as defined in 15 U.S.C. § 2301(1).

67.     Plaintiffs and Class members are consumers as defined in 15 U.S.C. § 2301(3), and are persons entitled under the applicable state laws to enforce against the warrantor the obligations of its express and implied warranties.

68.     Plaintiffs purchased Products costing more than $5 and their individual claims are greater than $25 as required by 15 U.S.C. §§ 2302(e) and 2310(d)(3)(A).

69.     Defendant is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

70.     The Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1), provides a cause of action for any consumer, who is damaged by the failure of a warrantor to comply with a written or implied warranty.

71.     Defendant made promises and representations in an express warranty provided to all consumers, which became the basis of the bargain between Plaintiffs, Class and Subclass members and Defendant.

72.     Defendant's written affirmations of fact, promises and/or descriptions as alleged––including promises that the Products promote healthy hair, are "free of harsh ingredients," "made with nourishing, hydrating ingredients," "free of sulfates, parabens, and silicons to gently cleanse curls," sourced from "the highest-quality, good-for-you ingredients from around the world," and that they give "your curls what they need and nothing they don't,"[19] and leave hair "healthy, bouncy, and simply gorgeous" — are each a "written warranty." The affirmations of fact, promises, and/or descriptions constitute a "written warranty" within the meaning of the Magnuson-Moss Act, 15 U.S.C. §2301(6).

73.     Defendant also advertises, markets, and promotes its Products, including but not limited to on its website, as coming with a "satisfaction guarantee," which states that if a

---

[19] https://www.devacurl.com/us/curl-101/product-philosophy https://www.devacurl.com/us/curl-101/product-philosophy/ingredient-glossary

consumer/purchaser is not "completely satisfied with a DevaCurl product that you purchased from us or one of our authorized resellers" "for any reason," Defendant will allow for a return and provide a full refund of the purchase price.[20] The complete satisfaction guarantee constitutes a "written warranty" within the meaning of the Magnuson-Moss Act, 15 U.S.C. §2301(6).

74.     Further, Defendant provided Plaintiffs and the other Nationwide Class members with an implied warranty of merchantability in connection with the purchase of the Products that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).

75.     As a part of the implied warranty of merchantability, Defendant warranted to Plaintiffs and Class members that the Products were of merchantable quality (i.e., a product of a high enough quality to make it fit for sale, usable for the purpose it was made, of average worth in the marketplace, or not broken, unworkable, contaminated or flawed or containing a defect affecting the safety of the product), would pass without objection in the trade or business, and were free from material defects, and reasonably fit for the use for which they were intended.

76.     Defendant breached all applicable warranties, as described in more detail above, and is therefore liable to Plaintiffs and the Nationwide Class pursuant to 15 U.S.C. § 2310(d)(1). Without limitation, the Products suffer from latent and/or inherent defects that cause substantial hair loss, hair breakage, and scalp irritation, rendering the Products unfit for their intended use and purpose. This defect substantially impairs the use, value and safety of the Products.

77.     Any effort to limit the implied warranties in a manner that would exclude coverage of the Products is unconscionable, and any such effort to disclaim, or otherwise limit, for the defective Products is null and void. Any limitations on the warranties are procedurally

---

[20] https://www.devacurl.com/us/faq#shipping

unconscionable. There was unequal bargaining power between Defendant, on the one hand, and Plaintiffs and the other Nationwide Class members, on the other. Moreover, any limitations on the warranties are substantively unconscionable. Following early reports of injuries caused by the Products, including multiple complaints to the FDA beginning in February 2018, Defendant knew that the Products were defective and would continue to pose safety risks. Defendant failed to disclose the product defect to Plaintiffs and the Nationwide Class members. Thus, Defendants enforcement of the durational limitations on those warranties is harsh and shocks the conscience.

78.     Plaintiffs and each of the other Nationwide Class members have had sufficient direct dealings with Defendant to establish privity of contract.

79.     Nonetheless, privity is not required here because Plaintiffs and each of the other Class members are intended third-party beneficiaries of contracts between Defendant and its third-party retailers, and specifically of the implied warranties. Third-party retailers such as Ulta Beauty and Amazon were not intended to be the ultimate consumers of the Products and have no rights under the warranty agreements provided with the Products; the warranty agreements were designed for and intended to benefit consumers.

80.     All conditions precedent to seeking liability under this claim for breach of express and implied warranty have been performed by or on behalf of Plaintiffs and others in terms of paying for the goods at issue.

81.     Pursuant to 15 U.S.C. § 2310(e), Plaintiffs and the Nationwide Class are entitled to bring this class action and are not required to give Defendant notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs and the Nationwide Class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

82.     Furthermore, affording Defendant an opportunity to cure its breach of written warranties would be unnecessary and futile here. Defendant was placed on reasonable notice of the defect in the Products and breach of the warranties based on numerous complaints received directly and indirectly from Plaintiffs and the Nationwide Class, including without limitation multiple complaints to the FDA beginning in February 2018, and have had ample opportunity to cure the defect for Plaintiffs and the Nationwide Class, but have failed to do so, instead denying the claims and putting out public statements denying that there are any issues with the Products. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs and the Nationwide Class resort to an informal dispute resolution procedure and/or afford Defendant a reasonable opportunity to cure the breach of warranty is excused and thereby deemed satisfied.

83.     While notice is not required (for the reasons set forth above), on February 19, 2020, Plaintiffs sent a letter to Defendant giving notice of its violations of its express and implied warranties and demanding that Defendant correct such violations.

84.     Defendant's breaches of warranty have caused Plaintiffs and the other Nationwide Class members to suffer injuries, paying for defective Products, and entering into transactions they would not have entered into at all, or not for the consideration paid. As a direct and proximate result of Defendant's breaches of warranty, Plaintiffs and the Nationwide Class have suffered damages and continue to suffer damages, including economic damages in terms of the cost of the Products and the cost of efforts to mitigate the damages caused by same.

85.     Pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Nationwide Class members are also entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have

reasonably been incurred by Plaintiffs and the other Nationwide Class members in connection with the commencement and prosecution of this action.

**COUNT 2**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of The Nationwide Class)**

86.     Plaintiffs bring this count on behalf of themselves and the Nationwide Class and repeat and re-allege each and every prior paragraph as if fully included herein.

87.     Defendant sold and Plaintiffs purchased the Products from authorized resellers of Defendant's products.

88.     Defendant represented in its marketing, advertising, and promotion of the Products that the Products promote healthy hair, and are "free of harsh ingredients," "made with nourishing, hydrating ingredients," "free of sulfates, parabens, and silicons to gently cleanse curls," sourced from "the highest-quality, good-for-you ingredients from around the world" and that they give "your curls what they need and nothing they don't."[21]

89.     Defendant also advertises, markets, and promotes its Products, including but not limited to on its website, as coming with a "satisfaction guarantee," which states that if a consumer/purchaser is not "completely satisfied with a DevaCurl product that you purchased from us or one of our authorized resellers" "for any reason," Defendant will allow for a return and provide a full refund of the purchase price.[22]

90.     Defendant made these representations to specifically induce Plaintiffs and Class Members to purchase the Products.

91.     Defendant's representations that the Products constituted part of the basis of the

---

[21] https://www.devacurl.com/us/curl-101/product-philosophy
[22] https://www.devacurl.com/us/faq#shipping

bargain between Defendant and Plaintiffs (and Class Members).

92.    Each of these representations and the complete satisfaction guarantee constitutes an express written warranty.

93.    Defendant breached its express warranties because the Products suffer from a latent and/or inherent defect that causes them to produce substantial hair loss and scalp irritation, rendering the unfit for their intended use and purpose. This defect substantially impairs the use, value and safety of the Products.

94.    The latent and/or inherent defect at issue herein existed when the Products left Defendant's possession or control and was sold to Plaintiffs and Class members. The defect was undiscoverable by Plaintiffs and the Class members at the time of purchase of the Products.

95.    While Defendant expressly disavows all warranties or representations, this partial disclaimer is expressly limited by its own plain language to "any products or services ordered or provided via the [Defendant's] website.[23] None of the Products at issue in this case (including those purchased by the Plaintiffs) were products "ordered or provided via the [Defendant's] website," and all persons who purchased the Products from Defendants' website are expressly excluded from the putative Class and Subclass.

96.    Plaintiffs and the Nationwide Class are entitled to bring this class action and are not required to give Defendant notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs and the Nationwide Class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

97.    Furthermore, affording Defendant an opportunity to cure its breach of written warranties would be unnecessary and futile here. Defendant was placed on reasonable notice of

---

[23] https://www.devacurl.com/us/terms-conditions

the defect in the Products and breach of the warranties based on numerous complaints received directly and indirectly from Plaintiffs and the Nationwide Class, including without limitation multiple complaints to the FDA beginning in February 2018, and have had ample opportunity to cure the defect for Plaintiffs and the Nationwide Class, but have failed to do so, instead denying the claims and putting out public statements denying that there are any issues with the Products.[24] Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs and the Nationwide Class resort to an informal dispute resolution procedure and/or afford Defendant a reasonable opportunity to cure the breach of warranty is excused and thereby deemed satisfied.

98.    While notice is not required (for the reasons set forth above), on February 19, 2020, Plaintiffs sent a letter to Defendant giving notice of its violations of its express and implied warranties and demanding that Defendant correct such violations.

99.    As a direct and proximate result of Defendant's breaches of these express warranties, Plaintiffs and Class Members have been damaged because they did not receive the products as specifically warranted by Defendant. Plaintiffs also paid a premium for Defendant's Products that did not conform to Defendant's express warranties.

## COUNT 3
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (On Behalf of The Nationwide Class)

100.    Plaintiffs bring this count on behalf of themselves and the Nationwide Class and repeat and re-allege each and every prior paragraph as if fully included herein.

101.    UCC § 2-314 states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." UCC §

---

[24] https://www.devacurl.com/us/deva-community-statement

2-314 has been adopted in New York, N.Y. UCC Law §§ 2-314 and 2A-212, and in 35 other states.

102.    As set forth above, Plaintiffs have standing to pursue this claim as they have suffered injury in fact and have lost money or property as a result of Defendant's actions.

103.    Defendant is a "merchant" within the meaning of UCC § 2-314 because it deals in the sale of the Products and holds itself out as "having knowledge or skill peculiar to" haircare products such as the Products at issue.

104.    Defendant sold and Plaintiffs purchased the Products from authorized resellers of Defendant's products.

105.    By placing such products into the stream of commerce, and by operation of law N.Y. UCC Law §§ 2-314 and 2A-212, Defendant impliedly warranted to Plaintiffs and Class members that the Products were of merchantable quality (*i.e.*, a product of a high enough quality to make it fit for sale, usable for the purpose it was made, of average worth in the marketplace, or not broken, unworkable, contaminated or flawed or containing a defect affecting the safety of the product), would pass without objection in the trade or business, and were free from material defects, and reasonably fit for the use for which they were intended.

106.    Defendant breached the implied warranty of merchantability because the Products suffer from a latent and/or inherent defect that causes them to produce substantial hair loss and scalp irritation, rendering the unfit for their intended use and purpose. This defect substantially impairs the use, value and safety of the Products.

107.    The latent and/or inherent defect at issue herein existed when the Products left Defendant's possession or control and was sold to Plaintiffs and Class members. The defect was undiscoverable by Plaintiffs and the Class members at the time of purchase of the Products.

108.    Defendant has misled consumers into believing the Products were "Sulfate Free," that they are used to "gently cleanse," that they are not "harsh" or made with "harsh ingredients," and that hair loss and shedding (even excessive shedding) was "common," "normal," and "not preventable." Defendant took advantage of Plaintiffs' and the Classes' trust and confidence in its brand, and deceptively sold the Products, knowing that they caused hair loss, shedding, and scalp irritation.

109.    Defendant's intended beneficiaries of these implied warranties were ultimately Plaintiffs and the Classes, not distributors who sold the Products. Moreover, Defendant exercises substantial control over which outlets can carry and sell the Products, which are the same places that Plaintiffs purchased them. In addition, Defendant's warranties are in no way designed to apply to the distributors that purchase the Products in bulk and then sell them on an individual basis to each consumer.  Individual consumers are the ones who ultimately review the labels, which Defendant knows, prior to making any purchasing decisions. As a result, these warranties are specifically designed to benefit the individual consumer who purchases the Products.

110.    Plaintiffs and Class Members sustained damages as a direct and proximate result of Defendant's breaches in that they paid a premium for the Products that they would not have otherwise paid. Plaintiffs and the Classes also did not receive the value of the Product they paid for—the Products are worthless or worth far less than Defendant represents due to the latent and/or inherent defect that causes hair damage, hair loss and/or scalp irritation.

111.    Plaintiffs and the Classes have sustained, are sustaining, and will sustain damages if Defendant continues to engage in such deceptive, unfair, and unreasonable practices.

112.    Accordingly, Plaintiffs are entitled to injunctive relief, attorneys' fees and costs, and any other relief that the Court deems just and equitable.

113.    As a result of the breach of the implied warranty of merchantability, Plaintiffs and Class members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and/or other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

## COUNT 4
## UNJUST ENRICHMENT
**(On Behalf of The Nationwide Class, and in the Alternative to Counts 1-3)**

114.    Plaintiffs bring this count on behalf of themselves and the Nationwide Class and repeat and re-allege each and every prior paragraph as if fully included herein.

115.    According to Defendant's website, New York law applies to all claims.[25]

116.    Plaintiffs conferred benefits on Defendant by purchasing the Products at a premium price.

117.    Defendant has knowledge of such benefits.

118.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class Members' purchases of the Products, because the Defendant will obtain the benefits conferred by Plaintiffs and the Class Members without adequately compensating Plaintiffs and the Class Members therefore. Defendant failed to adequately compensate the Plaintiffs for the benefits conferred by providing the No-Poo Products without those products having the characteristics and benefits promised.

119.    Retention of those moneys under these circumstances is unjust and inequitable because (a) Defendant falsely and misleadingly represented that the Products promoted healthy hair, were "Sulfate Free," that they are used to "gently cleanse," that they are not "harsh" or made with "harsh ingredients," and that hair loss and shedding (even excessive shedding) was

---

[25] https://www.devacurl.com/us/terms-conditions

"common," "normal," and "not preventable." (b) Plaintiffs paid a price premium for the Products based on Defendant's false and misleading statements; and (c) the Products did not have the characteristics and benefits promised because of the latent and/or inherent defect that causes hair loss and scalp irritation.

120.    This has resulted in injuries to Plaintiffs and members of the Class because they would not have purchased (or paid a price premium) for the Products had they known of the latent and/or inherent defect that causes hair damage, hair loss and/or scalp irritation in Defendant's Products.

121.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and members of the Class is unjust and inequitable, and because equity and good conscience requires restitution, Defendant must pay restitution to Plaintiffs and members of the Class for its unjust enrichment, as ordered by the Court.

## COUNT 5
## NEGLIGENCE – FAILURE TO WARN
### (On Behalf of The Nationwide Class)

122.    Plaintiffs bring this count on behalf of themselves and the Nationwide Class and repeat and re-allege each and every prior paragraph as if fully included herein.

123.    According to Defendant's website, New York law applies to all claims.[26]

124.    At all times referenced herein, Defendant was responsible for designing, formulating, testing, manufacturing, inspecting, distributing, marketing, supplying and/or selling the Products to Plaintiffs and the Class.

125.    At all times material hereto, the use of the Products in a manner that was intended and/or reasonably foreseeable by Defendant involved substantial risk of hair loss and scalp

---

[26] *Id.*

irritation.

126.    At all times the risk of substantial hair loss and scalp irritation was known or knowable by Defendant, in light of the generally recognized and prevailing knowledge available at the time of manufacture and design, as described herein.

127.    Defendant, as the developer, manufacturer, distributor and/or seller of the Products, had a duty to warn Plaintiffs and the Class of all dangers associated with the intended use.

128.    After receiving multiple complaints of hair loss and scalp irritation, including multiple adverse event reports to the FDA, and after dozens (if not hundreds) of online postings reporting hair loss and scalp irritation after using the Products, a duty arose to provide a warning to consumers that use of the Products could result in hair loss or scalp irritation.

129.    Defendant was negligent and breached its duty of care by negligently failing to give adequate warnings to purchasers and users of the Products, including Plaintiffs and the Class, about the risks, potential dangers and defective condition of the Products.

130.    Defendant was negligent and breached its duty of care by negligently blaming other risk factors for hair loss, by telling consumers that hair loss and shedding was "common," "normal," and "not preventable," thereby concealing and failing to warn purchasers and users of the Products, including Plaintiffs and the Class, about the risks, potential dangers and defective condition of the Products.

131.    Defendant knew, or by the exercise of reasonable care, should have known of the inherent design defects and resulting dangers associated with using the Products as described herein, and knew that Plaintiffs and Class members could not reasonably be aware of those risks. Defendant failed to exercise reasonable care in providing the Class with adequate warnings.

132.    As a direct and proximate result of Defendant's failure to adequately warn consumers that use of the Products could cause injuries such as hair loss, balding and/or scalp irritation, Plaintiffs and the Class have suffered damages as set forth herein.

### COUNT 6
### NEGLIGENCE – FAILURE TO TEST
### (On Behalf of The Nationwide Class)

133.    Plaintiffs bring this count on behalf of themselves and the Nationwide Class and repeat and re-allege each and every prior paragraph as if fully included herein.

134.    According to Defendant's website, New York law applies to all claims.[27]

135.    Defendant did not perform adequate testing on the Products, which were defectively designed, formulated, tested, manufactured, inspected, distributed, marketed, supplied and/or sold to Plaintiffs and the Class.

136.    Adequate testing would have revealed the serious deficiencies in the Products in that it would have revealed the substantial hair loss and scalp irritation occasioned by use of the Products.

137.    Defendant had, and continues to have, a duty to exercise reasonable care to properly design—including the duty to test—the Products before introducing them into the stream of commerce.

138.    Defendant breached these duties by failing to exercise ordinary care in the design and testing of the Products, which it introduced into the stream of commerce, because Defendants knew or should have known the Products could cause substantial hair loss and scalp irritation.

139.    Defendant knew or reasonably should have known that Class members such as Plaintiffs would suffer economic damages or injury and/or be at an increased risk of suffering

---

[27] *Id.*

damage and injury, as a result of its failure to exercise ordinary care in the design of the Products by failing to conduct appropriate testing.

140.    By reason of the foregoing, Plaintiffs and the Class experienced and/or are at risk of experiencing financial damage and injury.

141.    As a direct and proximate result of Defendants' failure to test the Products designed, formulated, manufactured, inspected, distributed, marketed, warranted, advertised, supplied and/or sold by the Defendant, Plaintiffs and the Class have suffered damages as described above.

## COUNT 8
## VIOLATION OF THE NEW YORK DECEPTIVE TRADE PRACTICES ACT
### New York Gen. Bus. Law § 349, *et seq.*
**(On behalf of the New York Subclass and in the Alternative to Count 7)**

149.    The New York Plaintiff identified above, individually and on behalf of the New York Subclass, incorporate by reference each and every prior paragraph as if fully stated herein.

150.    The New York Deceptive Acts and Practices Act makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349.

151.    Defendant's deceptive acts and practices include:

a.    Knowingly designing, developing, manufacturing, advertising, and selling Defendant's Products with false health claims and significant defects that result in health and safety risks when used so that consumers did not receive the benefit of their bargain;

b.    Marketing and selling Defendant's Products that relied upon false health claims, while at the same time exposing consumers to health and safety risks solely to increase profits;

c.    Making affirmative public representations about the alleged benefits of Defendant's Products while, at the same time, not ensuring consumer health and safety with respect to use of the Products; and

d.    Concealing material information from consumers regarding the true nature of the defects in Defendant's Products in order to impact consumer purchasing behavior.

152.    Defendant violated N.Y. Gen. Bus. Law. § 349's prohibition against engaging in unlawful acts and practices by engaging in false and misleading advertising and by omitting material facts from purchasers of Defendant's Products.

153.    As alleged more fully herein, Defendant's marketing and sale of Defendant's Products, and more specifically its failure to inform customers of the health and safety risks inherent in Defendant's Products, violated N.Y. Gen. Bus. Law § 349, common law, and other statutory violations as alleged herein. Plaintiff reserves the right to allege other violations of the law, which constitute other unlawful business acts and practices. As alleged herein, Defendant continues to misrepresent the Products' abilities and continues to deny that the Products pose health and safety risks, Defendant has not recalled its Products nor provided any remedial efforts including a warning disclosing their possible risks, and Defendant's conduct is ongoing and continues to this date.

154.    Defendant violated N.Y. Gen. Bus. Law § 349's prohibition against unfair conduct by failing to inform its customers about Defendant's Products' abilities and their potential health and safety risks; engaging in a pattern or practice of concealing those facts and continuing to sell those Defendant's Products despite its knowledge that they are misrepresented and carry health and safety risks (including the risks of hair damage, hair loss, excessive shedding, and/or scalp irritation) - thereby depriving customers of the value of Defendant's Products as represented. This conduct is substantially injurious to consumers, offends public policy, is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefit. Specifically, the health and safety risks were outweighed by Defendant's profit motive. Defendant

engaged in this conduct at the expense of its customers' rights when other, lawful alternatives were available (such as providing customers with full information about Defendant's Products, including the known risks and potential side effects of use, prior to purchase).

155.    Defendant engaged in this conduct to gain an unfair commercial advantage over its competitors, seeking to avoid public knowledge of the abilities of Defendant's Products and their defects to avoid damage to their sales or reputation. Defendant withheld critical and material information from Plaintiffs and New York Subclass Members, competitors, and the marketplace, all to Defendant's unfair competitive advantage.

156.    Defendant's business practices, as alleged herein, constitute fraudulent conduct because they were likely to deceive, and did deceive, New York Subclass Members into purchasing Defendant's Products when those Products were misrepresented and defective with health and safety risks and otherwise did not perform as advertised.

157.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

158.    As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent acts and practices, Plaintiff and New York Subclass Members were injured and lost money or property, including from not receiving the benefit of their bargain in purchasing Defendant's Products, and increased time and expense in dealing with treating damages from the use of Defendant's Products.

159.    Defendant recklessly disregarded Plaintiff and New York Subclass members' rights. Defendant's knowledge of the Defendant's Products' false claims and health and safety risks put it on notice that the Defendant's Products were not as it advertised.

160.    Plaintiff and the New York State Class seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, statutory damages, punitive damages, and any other just and proper relief available under the New York Deceptive Acts and Practices Act.

**COUNT 9**
**FALSE ADVERTISING**
**New York Gen. Bus. Law § 350, *et seq.***
**(On Behalf of The New York Subclass)**

161.     The New York Plaintiff identified above, individually and on behalf of the New York Subclass, incorporate by reference each and every prior paragraph of this Complaint as if fully stated herein.

162.     The New York False Advertising Act makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 350.  False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity …."

163.     The above-described false, misleading, and deceptive advertising Defendant disseminated continues to have a likelihood to deceive in that Defendant failed to disclose the true nature of Defendant's Products. Defendant failed to instigate a public information campaign to alert consumers of the defects and, instead, continued to misrepresent the true nature of Defendant's Products, continuing to deceive consumers.

164.     Defendant continued to misrepresent to consumers that Defendant's Products were capable of certain benefits without disclosing health and safety risks.  Had Defendant disclosed those issues, rather than falsely advertising Defendant's Products' abilities, consumers would have not purchased Defendant's Products, and would not pay an inflated price for Defendant's Products.

165.     In making and disseminating the statements alleged herein, Defendant knew, or should have known, its representations, advertisements, and statements were untrue and misleading in violation of N.Y. Gen. Bus. Law § 350, *et seq*. Plaintiff and other New York Subclass Members based their purchasing decisions on Defendant's omitted material facts. The

revenues to Defendant attributable to Products sold in those false and misleading advertisements amount to hundreds of millions of dollars. Plaintiff and New York Subclass Members were injured in fact and lost money and property as a result.

166.    The misrepresentations and non-disclosures by Defendant of the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute violations of N.Y. Gen. Bus. Law § 350, *et seq*.

167.    As a result of Defendant's wrongful conduct, Plaintiff and the New York Subclass Members lost money. Plaintiff and the New York Subclass Members are therefore entitled to restitution as appropriate for this cause of action.

168.    Pursuant to N.Y. Gen. Bus. Law § 350, Plaintiffs and the New York Subclass members seek injunctive relief, as well as monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial, and (b) statutory damages in the amount of $500 each for New York Subclass member.

### COUNT 10
### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACTFla. Stat. § 501.201 *et seq.*
### (On behalf of the Florida Subclass)

169.    The Florida Plaintiff identified above, individually and on behalf of the Florida Subclass, incorporates by reference each and every prior paragraph of this Complaint as if fully stated herein.

170.    The Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA"), Fla. Stat. § 501.201 *et seq*., prohibits the use of unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.

171.    Defendant's conduct described herein constitutes the act, use and employment of deception, fraud, false pretenses, false promises, misrepresentation, and unfair practices in the conduct of Defendant's trade or commerce.

172.    Defendant intended that Plaintiff and each of the members of the Florida Subclass would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

173.    Defendant knew or should have known that its representations of fact concerning the Products are material and likely to mislead consumers.

174.    Defendant's practices, acts, and course of conduct in marketing and selling the Product are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment.  Like Plaintiff, members of the Florida Subclass would not have purchased the Products had they known the truth about them.

175.    Plaintiff and members of the Florida Subclass have been directly and proximately damaged by Defendant's actions.

176.    As a result of the Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other members of the Florida Subclass have sustained damages in an amount to be proven at trial.

177.    In addition, Defendant's conduct showed malice, motive, and a reckless disregard of the truth such that an award of punitive damages is appropriate.

## **RELIEF DEMANDED**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek a judgment against Defendant, as follows:

a.  For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Classes and Plaintiffs' attorneys as Class Counsel;

b.  For an order declaring that Defendant's conduct violates the statutes referenced herein;

c.  For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

d.  For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.  For prejudgment interest on all amounts awarded;

f.  For an order of restitution and all other forms of equitable monetary relief;

g.  For injunctive relief as pled or as the Court may deem proper; and

h.  For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit.

### JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all claims so triable.

DATED: February 25, 2020                    Respectfully submitted

Gary S. Graifman, Esq.
**KANTROWITZ,   GOLDHAMER**
**& GRAIFMAN, P.C.**
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
Telephone: 845-356-2570
Facsimile:  845-356-4335
ggraifman@kgglaw.com

Melissa R. Emert, Esq.
**STULL, STULL & BRODY**
6 East 45th Street-5th floor
New York, NY 10017
Telephone: 212-687-7230
Facsimile:  212-490-2022
Email: memert@ssbny.com

*Attorneys for Plaintiffs*